I'd like to reserve three minutes for rebuttal. All right. May it please the court. Good morning, your honors. My name is Sol Weiss and I'm here representing a class of Chrysler Pacifica owners. And this is a case where the court below denied motion to dismiss, denied an early motion for summary judgment because there was no discovery. And then two weeks later, when another motion, this time judgment and pleadings was filed, the court granted that. Procedurally, we believe without a cogent reason for changing the court's view on why summary judgment was denied, the law of the case doctrine would prevent the court from granting judgmental pleadings. Could I ask a question about that? Sure. Assume in general, just a generic case, a district court makes a wrong legal ruling. It's just wrong. We know that now. It's wrong. And then a month later, carelessly, forgetting that they made that wrong decision, makes the correct ruling, ignoring law of the case, not caring about it, not even remembering. And then it's appealed to us. We're supposed to reverse the correct ruling and reinstate the wrong ruling because the district court proceeded that way? In the abstract, not your case. Oh, I understand. That can't be right, can it? It's a discretionary ruling, Your Honor. It's discretionary for us to say, you made the right ruling. We reverse so that you can make the wrong ruling so that we can reverse you again. I understand that, Judge Rodgers. What's the answer to that? That can't be right, right? That's got to be wrong. Or it is right? Well, you have to take a look at what the rulings are. I'm just hypothesizing. One is right and one is wrong. If the first one is, how did I set it up? If the first one is wrong and the second one is right, you're saying we have to reverse because the district court wasn't consistent below. That can't be right, can it? Well, if the district court explained why it was wrong the first time. I'm hypothesizing there's no explanation. It's just silliness. He woke up befuddled and came down with the right ruling, my hypothetical. You want us to reverse that because he previously had the wrong ruling and didn't adequately explain why the wrong ruling was wrong? That's not what we're advocating. Given the fact that this is a discretionary move by the district court, aren't we wasting a lot of time? I would like to get to the merits. You're the one that started with it. Well, I understand. That's how we started the brief. But on the merits is where you want us to go. I do believe you're correct, Judge McKig. The merits are pretty clear. We filed a complaint. We amended the complaint. Let me describe what we said in the amended complaint. I think it sets up an issue because we certainly pled enough facts that would get us by Iqbal or Twombly. I just don't see you having pled one single fact that said that your clients got this extended warranty. Where do you say that? They didn't. We didn't say they did. What we do say is that initially, the new Chrysler issued technical service bulletins and a letter saying that they were going to extend the warranty for engine cradle rust and rot. There's no evidence that your clients got the letter. But we don't need the letter as we understand the law. Then we have... What gives you the extended warranty without the letter? They assumed the duty. It's the language in the technical service bulletin that then assumes the duty? And the letter. You just said you don't need the letter. I said and the letter. We have both. The letter doesn't have to be received. It's the intention of the actor who's assuming a duty. And the only time in this case... So Chrysler says they sent out this letter to a select group of people. Scars were made in six weeks during the rust belt state. Something along those lines. Well, that's what... You're right. That's what they say in a subsequent declaration. Finish. So there's a question mark on the end? I apologize, Your Honor. So that's what Chrysler says. Now, you don't seem to think it's important to even allege that you got... That your clients got the letter, right? Correct. Why not? Because they assumed the duty to all owners, whether the letter was received or not. So if they send a letter to certain people and not others, that letter constitutes assuming duty to the others? It shows what the actor intended to do when it voluntarily assumed the duty. And we have to go back... I want you to assume that the letter goes to a discrete group of people, not others. So that letter then is evidence that they assumed a duty to others? That's what I just don't understand. The technical bulletin, I understand. The letter, I don't understand. We don't know. All I can tell you, yes, not one of the named plaintiffs received the letter. We don't know who the letters went to. Letter says you. It doesn't say we are extending it to this class. It says we're extending it to you, right? Correct. So if it's extended to you and you didn't receive the letter, plain meaning would be it's not extended to you. I understand that. You're saying the obligation comes from something else then? Yes. What is it? Well, we now have the Second Circuit's opinion in the Jim bankruptcy regarding ignition switches and prior to that decision, people assumed that the free and clear order in the 363 bankruptcies meant one thing. And now the Second Circuit has found that used car owners who purchased their vehicles after the free and clear order are not bound by the free and clear order. But that's because there was an argument about procedural due process. No, Your Honor, I believe that's due process goes to new car owners. The court in the Second Circuit case you asked us to look at, if I understood it right, said the plaintiff's procedural due process rights would be violated by enforcing the free and clear provision in the sale order. And that went to the new car owners because the allegation was at the time of the filing of the bankruptcy petition, GM didn't disclose that it knew of the problem with the ignition switches. So there's something in this Elliot versus GM that deals with used car owners that apparently... There's four different classes of plaintiffs in that decision, Your Honor. One are used car owners, one are independent filers, and one were new car owners who didn't have a chance to object to the bankruptcy proceedings because they weren't advised that the all-car company knew about the ignition switch problems. And I can give you the page if you'd like to know the page citations. Was the opinion dealing with procedural due process with respect to each one of these classes of car owners? No, because I think the opinion said with regard to the used car owners, the free and clear order did not apply as a matter of law. And... I don't want to interrupt Judge McKeague. I'm done. The free and clear order, as I understand it, did away, at least as assumed by the parties in this litigation, from a pure successor liability theory. Correct, and that's what... Right, and you all haven't challenged that in this litigation. We did not because we were plaintiffs in the Burton case and we understood the Burton court to have eliminated that. If that's not before us, then you don't have pure successor liability here in the sense that whatever the previous company owed, the new company owes you. There's got to be some sort of independent or free. Well... Under the way this case was litigated. I understand that. So if that's the case, are you sort of saying now you want to go back and say that's successor liability or are you willing to argue this appeal on the assumption that there's not successor liability? I am arguing this appeal on that there isn't successor liability. In this case, it's an independent assumption of a duty. Okay, so we've got to find a basis for the independent assumption of duty in order to... I understand that. Is that right? And if I'm understanding the theory, I'm just trying to get the theory for where that could come from. It could come from some sort of latent, at least we were partially responsible, weakened form of successor liability. Some sort of, well, you don't require to do everything that the original company would do, but you do have some sort of background. That plus something else might be able to give you... That is our argument. Correct. Okay, so you've got that. It sort of doesn't stand by itself, but maybe in combination with something else might lead to a duty. And... Something else, as I understand it, is just pure knowledge that there's a defect. Is that right? There is a... There was a defect that wasn't disclosed until after the sale order was... That's right. You had a knowledge of a defect that you didn't disclose. Correct. But if you had knowledge of a defect of a competitor and you didn't disclose it, that wouldn't create a duty. You have to have something in addition to knowledge of the defect. Is that correct? Yes, Your Honor. So what you're doing is, in a sense, taking two things which are independently not sufficient and saying, well, together they create a duty. Well... Is that correct? It could be, but I want to get the nature of your argument. The nature of the argument is that... Sort of zero point... We don't know. We didn't have discovery to find out when the old company first knew of the problem. All we have... I'm trying to get at the legal basis for the duty. The legal basis for the duty, as I'm understanding from you, I'm trying to understand the nature of the theory. I mean, maybe it's the law in Ohio. Is Ohio... Is that the case? It's Ohio. It's Flagler. Maybe that's the law in Ohio, is that even though independently those two things are not enough, together they are enough to create a duty. So you've got the fact that you're the successor, not enough to create a duty. The fact that you know and don't disclose a defect, not a duty. But if you're one of these people who's not a successor, but you did succeed, right, and you have the knowledge and you didn't disclose it, you put those things together, that creates a duty. Is that the law in Ohio? The law of Ohio is a buyer expressly or impliedly agrees to assume liability. There's a duty. That's Flagler. The buyer assumes the duty?  By a buyer company, you mean? Yes. The buyer assumes the duty? Well, that's successor liability, isn't it?  For that limited purpose. So you're not arguing successor liability, you're really basically arguing successor liability. Absolutely. Let me ask another question, if I might, given your red lights on, about this question of this voluntarily assuming a duty or extending the warranty. Yes, sir. When I read the complaint, you talk about the technical bulletin, but you don't say anything in the complaint about that constituting a warranty. You also talk about the letter, and the letter is where you're referring to that constituting an extended warranty. We've sort of beaten to death whether the letter addressed to you, and you have no proof that your clients were you, did or did not extend the warranty. So then you went back to say, well, the technical bulletin extends the warranty. So two questions with that preface. One, did you plead that the bulletin extended the warranty? And two, do you have any law that says technical bulletins extend warranties? Not by itself, but along with other indicia, it can, yes. And that other indicia would be a letter that you didn't receive, and what else? We don't know who the letter went to, and what class members have gotten. You've got clients, and you have representatives, and not a single one of them says they got the letter. So granted, somebody else, the people in the six weeks, presumably they got the letter. But you're not purporting to represent them. They're fine. You want to represent everybody else. We don't know that the letter only went to people in the six-week period. That's not in our amended complaint. That came in a... We're wasting time here. The question is, do you have any cases? What's your best case that says a technical bulletin? Do you have any case that says a technical bulletin extends a warranty? No. So it's a technical bulletin plus something else, and here it's the letter, right? Yes. And what's your best case for that? Alone. One second. That's all right. You can come back and tell me when you come back if you want to, if you don't have it readily at hand. Thank you. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Good morning. The district court here did not err in granting judgment on the pleadings in favor of FCAUS and against the plaintiffs in this case. The district court rightfully held that plaintiff's allegations were insufficient to allege a relationship with FCAUS, which would create a duty on its part to warn plaintiffs about an alleged problem with corrosion with respect to the engine cradles in their 10- to 11-year-old Pacifica vehicles. The plaintiff's entire case in the district court was premised on the notion that because FCAUS undertook to extend a warranty on certain Pacifica vehicles, that FCAUS now has a legal duty to do the same for them. I guess the court below didn't have this Elliott case at its disposal when it made this ruling. Is that right? That's right, Your Honor. And does that case make a difference or change anything in terms of how the district court should have ruled? And if not, why not? Absolutely not, Your Honor. That decision has no bearing on any issue that was pleaded in the amended complaint in this case, any issue decided by the district court, or any issue that is even before this court. By way of background, the Second Circuit's decision in that case involved an interpretation of a bankruptcy sale order, and it considered whether or not new GM, which it characterized as its successor, could be required to respond to claims that were based on the conduct of old GM, where old GM knew of a defect, and old GM had full knowledge of that defect and full knowledge of potential claims relating to that defect, and failed to disclose them in its bankruptcy and failed to provide notice to the potential claimants that it knew of. Now, ultimately, the Second Circuit in that case held under the unique facts of that case, and it was talking about the ignition switch defect that had a lot of publicity and there were congressional hearings and reports in which a lot of evidence came out that old GM had actual knowledge of the defect and covered it up. But under the Second Circuit's analysis, the due process in that circumstance required old GM to provide direct notice of its knowledge of that defect to individuals who had potential claims. And because it didn't do so, provisions of this sale order, which made the sale free and clear to new GM, were ineffective. Now, there are numerous reasons why that case has no bearing on the claims that were pleaded here. First, the amended complaint in this case, Plaintiff's Theory, which is made clear, and I quote, Plaintiff's State, their theory is separate and distinct from any prior duties, contractual or otherwise. So they're trying to divorce their claims in this case from Old Car Co., the entity that manufactured their vehicles. And they go on to state, the duty owed by Defendant F.C.A.U.S., my client, is separate and distinct from any prior contractual dealings between plaintiffs, class members, and any pre-bankruptcy legal entities. So their theory in this case has nothing to do with Old Car Co. And the district court, the theory they pressed was this voluntary undertaking as to some vehicle owners somehow equates to a voluntary undertaking as to their vehicles. But I think as the court here has recognized, it just doesn't pan out that way. The law is very clear that when an entity or a person voluntarily assumes a duty, the law in every jurisdiction at issue here, that duty is limited to what is actually volunteered. It cannot be expanded to say that something beyond what was actually volunteered was volunteered. Now plaintiffs here chose to plead their claims in a way that they believed that would completely avoid bankruptcy issues. And that was intentional on plaintiffs' part because they didn't want to go to the bankruptcy court. They could have, but they chose not to. Indeed, when F.C.A.U.S. argued that plaintiffs' claims should be transferred to the bankruptcy court, plaintiffs argued against doing so. And to defeat that transfer, they expressly and affirmatively represented that their amended complaint raises non-bankruptcy liability issues predicated upon events, activities, and negligent conduct occurring after the bankruptcy. Now we know from reading the GM case that that's the exact opposite of what was at issue in the GM case. In the GM decision, it was all about what old GM knew before the bankruptcy. Plaintiffs also expressly proclaimed that F.C.A.U.S. learned of the engine cradle defect, and Mr. Weiss just said this again, after the sale order went into effect. And again, that's the exact opposite of the situation in the GM decision. And notably, the Second Circuit's decision there deemed it critical that old GM had that knowledge in its due process analysis. And plaintiffs also proclaimed in this case that their claims arose under non-bankruptcy law and are predicated solely on state law. And again, that's the opposite of what the issue was in the GM case. Now here, plaintiffs attempted to state a claim based on F.C.A.U.S.'s alleged conduct and completely disavowed any claims based on the conduct of the entity, Old Carco, that manufactured their vehicle. Now, in arguing here that the GM case has any applications, what they're really arguing is that they're now trying to assert a new theory which would require allegations exactly the opposite of what are contained in their amended complaint. They would have to allege that Old Carco was involved and now that F.C.A.U.S. is responsible because of Old Carco's involvement. But as this circuit has held on numerous occasions time and time again, a party can't expand its theory and it can't assert new theories or claims on appeal. They don't get two bites at the apple. They can't sit in the district court. They do rely on Ohio law, though. Yeah. It's not effective. Yes, Your Honor. They rely on Ohio law. And this is my question. First, I have two questions. This is my question. If Ohio law provided not that a successor company where there is such a clause is bound by all of the obligations of the predecessor company, but instead provided something like the following. I'm not saying it does, but if it did, in certain types of situation where you have particular access to important information and you don't disclose it to a class of people, you can be liable to those people for the harm that results from that. And one of those classes is you are the company that has bought the company that has particular access to that information. If that's what the Ohio law said, then there would be arguably a claim here, right? Well, Your Honor. If Ohio law said that. I believe that the law in every jurisdiction, including Ohio law. Now you're not answering the question. If Ohio law said that, then they would. If it was purely. If Ohio law said you have a special access to this information, such as you bought the company from the car that made the dangerous, or not dangerous, made the defective part, that gives you, the new company, an obligation not to take over all the obligations of the former company, but the one duty to inform about that knowledge that you have. If that's what Ohio law said, then you'd have a difficulty here. Is that correct? Well, if Ohio law was that if we had knowledge purely based. If it was purely that we had knowledge of an issue, that we had to disclose that issue, then I think the court would have to find that if there was allegations of knowledge, then you would have to disclose. Knowledge, but it could be a law that was limited to certain types of knowledge. Knowledge that you have a particular type of access to for this or that reason. The law could say something like that, right? Don't they sort of argue that that's exactly what's going on here? They rely on this Flaugher case. I don't know how you pronounce it. Flaugher. F-L-A-U-G-H-E-R. The successor corporation may acquire a duty to warn where defects are brought to its attention, regardless of the nature of the transaction transferring ownership, since it's not based on the successor status, but on its own knowledge of the defect. Now, maybe you can say that's totally out of sync with the rest of the country, but it does seem to say that, doesn't it? Your Honor, two things here. F-C-U-S is not a successor to Old Carco, and that's not. Well, in the layman's sense it is. I mean, it took over the company, right? It did not, Your Honor. It purchased assets, and so in the sense of. . . Well, it's technically distinguishable from that because it's not a successor company. Yes, Your Honor. We are not a successor entity. The sale order makes that clear. We would have to distinguish Flaugher, and then, I don't know, how do you pronounce that case? I think it's Flaugher. Flaugher? It's a G-H. Another thing on that case, Your Honor, if you look behind that case, that case was a little inarticulate because there are more factors. All cases, including under HIO law, you have to have a relationship in order for there to be a duty to disclose anything because otherwise if it was just purely based on knowledge, then an example you gave earlier, assume that F-C-A-U-S came into some knowledge about something was wrong with a GM vehicle. Well, of course F-C-A-U-S doesn't have to reach out to GM's customers. The law would never require it to reach out to GM's customers and advise them of some knowledge it had. So the law in Ohio in every jurisdiction requires that there be some relationship, and that's why in this case they chose to go under this voluntarily assumed duty because you can create a relationship by voluntarily creating some duty. Otherwise, there is no relationship between F-C-A-U-S and the plaintiffs at issue in this case. And indeed, plaintiffs on the T-S-B issue, the T-S-B was sent to dealerships. That's pled in the amended complaint. No plaintiff alleges that they received any T-S-B issued by F-C-A-U-S. We've touched on the letter and how no plaintiff alleges that they received that letter. That letter was specifically directed to individuals for which F-C-A-U-S agreed to extend the warranty. So what we have here is a situation where there was absolutely no relationship between F-C-A-U-S and the plaintiffs at issue in this case. Do you have an alternative argument that even if there was, there was no causation? Yes, Your Honor. Can you advert to that in a couple of sentences? Yes, Your Honor. On the causation issue, as an independent ground as to why the district court's judgment should be affirmed, plaintiffs don't dispute that causation is a necessary element of each and every one of the claims they pled. Plaintiffs, the allegations in their complaint don't describe causation. Plaintiffs in the district court and on this appeal have done nothing to establish that their allegations sufficiently... Why there's no causation? Yes, Your Honor. Plaintiffs complained of injury in this case, Your Honor, is that they have to bear the cost to correct their vehicles due to this corrosion issue. And you say that they would, even if they were warned, they would still have to bear the cost. Even if they were, I'm sorry, Your Honor. Even if they were warned, they would still have to bear the cost. Is that the idea? There are two ideas here, Your Honor. One is the only possible cause of that injury is a defect in the manufacturing process, assuming plaintiffs are right. Plaintiffs don't plead any allegations and they just simply can't. The FCAUS is liable as a manufacturer of their vehicle, so they had nothing to do with the corrosion issue. FCAUS had nothing to do with the corrosion issue and plaintiff's vehicle. We're assuming that they knew about it and didn't tell, though. That's the argument. FCA didn't cause the corrosion, Your Honor. We didn't make the corrosion any worse. And FCA didn't do anything that caused the need for plaintiffs to repair their vehicle. So, even if, as Your Honor assumes, that if FCAUS would have told these people, you know, listen, you bought a vehicle that was manufactured back in 2002, 2003, 2004, 2005. We've learned that there's a corrosion issue, which FCAUS doesn't admit. And that vehicle that you purchased from a different entity, that wouldn't change that there's corrosion. That wouldn't change that plaintiffs need to repair their vehicle. So, even if we told them that their vehicle might be subject or might develop corrosion. Would it reduce their damages if they knew about it earlier? Is that what you're saying, basically? I don't even agree that it would reduce their damages. It wouldn't change anything. Their vehicles would still be subject to whatever corrosion was going to occur, regardless if we told them or not. Thank you.  Mr. Weiss is arguing that both the bulletin and the letter, or the bulletin plus the letter, constituted this voluntary assumption of a duty. Hypothetically, could a technical service bulletin include language that did assume a duty? Well, a technical service bulletin, by definition and practice and experience, just goes to a dealership. So, it's not a communication to any vehicle purchaser or any vehicle owner. So, in that sense, it could never extend anything to a vehicle owner because it's not directed to, not intended to be seen by vehicle owners. It's not put out in public. You really like to rephrase things and change things. I didn't ask you that. Could a technical service bulletin have language, regardless of who it goes to, that extends a warranty? I mean, I guess, technically, a technical service bulletin. So, the bulletin could go to the dealerships and say, hey, when these cars come in, you check them. If it's got this defect, we'll replace it. You replace it and we'll pay you back for that. It could say that. It theoretically could say that. Okay. Now, presumably, that's what a lot of them say when there are these various safety defects in cars and the federal government either requires or they anticipate they will. So, they send these bulletins out, right? They have different procedures, but it's similar to a bulletin. So, now, let's go back to this bulletin in particular. This bulletin, in particular, as I understand it, told the owners and the mechanics to check the cradles and the suspensions and see if they had perforations and whether they needed replacement. That's a notice, right? Yes. Okay. Now, what the question then becomes, Mr. Weiss argues that is an extended warrant that says we'll pay for it if you check it and find it needs replacement. I think your response is probably pretty obvious, but tell me what your response is as to why that language in this technical service bulletin is not a warrant. Because it's not saying for the vehicles at issue that FCAUS is going to cover that repair. So, it's just a notice. That's your position, basically. It's a check, and here's an issue we've identified that might apply to these very specific vehicles. Go ahead and check them out if they come in. Okay. You answered it. Thank you. Thank you, Judge McKeek. Assuming that's what the TSB said, check it out and see if it needs replacement. Is there any language in there that says that Chrysler will pay for that? They will replace the part, yes. I believe that's what the TSB says initially. What is the language in the TSB that you're relying upon that says that it will be replaced at the successor? Well, there's an argument about whether they are a successor.  What's the language in there that you're relying upon that says Chrysler will pay for that, assuming you find the parts corroded? Let me see what it says. Give me a second. Do you have a page ID for the bulletin itself? I can get it for you. Is it attached to the complaint? I believe it is attached to the complaint. Okay. It says... Well... It's footnote four. I don't have it with me, Your Honor, but I think it's in the record. It's not set as a separate issue. Footnote four just says TSB number 12-001-10, dated October 23, 2010. And it said, check for the engine cradles and front suspension of certain 2004-2005 Chrysler Pacifica V6-3.5 liter VIN 4 vehicles for preparation and possible replacement. That's what your complaint says? Yes. That doesn't have quotes on it, so we don't know whether that's exactly what the bulletin itself says. I apologize. I don't have it with me. Okay. So when you're... At least you think your position is in one that says, check them for perforation and possible replacement. That means at the cost of the car company. Yes, sir. Why would you read that into that? It's my understanding, and it's also clarified by the letter, and I do apologize. I do not have that TSB with me. Well, it's only clarified by the letter insofar as helping your clients if the letter applied to them, which we've already discussed. We've been down there. So absent being able to establish the letter applied to them, you've got to rely on the language of the bulletin. TSB. And if you would like, Your Honor, we could add to the record if you think it's helpful. Apparently you didn't think it was helpful. You didn't give it to us. Surely the TSB is in the record. I assume it's somewhere. I think it is, and I just don't have a page for it, and if it's not... Did you find it? No, I didn't. I have another question when you're done. Here, I'm done. I'd like to ask a question about your reply brief, because I'm trying to get the theory, your theory. And here, on page 6 to 7 of your reply brief, yours is the gray brief, right? Yeah. It says, characterizes FCA as arguing that FCA U.S. undertook voluntary action and issued an extended warranty for certain vehicles. And the district court was correct. Plaintiffs, in holding, the plaintiffs were not covered by the warrant. However, plaintiffs do not allege a voluntary duty. This is your language. Plaintiffs do not allege a voluntary duty. Instead, plaintiffs alleged that FCA extended the warranty to at least all 2004-2005 Pacificas to satisfy its duty to warn of the defect and to garner repeat business. Is that the argument that we're talking about here? There were two arguments. First, they assumed the duty by the TSBs and the letter. We've been through that. And the second thing is, as we have stated— It's a duty to warn. Yes. And I do have cases— Here, you're tying the two together. Is that just sort of a misstatement? No. So you've got that they extend the warranty to satisfy the duty to warn. Correct. So they undertook a duty, or they undertook an obligation, in order to satisfy an obligation they already had. Is that the idea? Yes, sir. So if either of those is lacking, then the other one doesn't cure it? Or does either one of them stand alone? I think they stand alone. Okay. But I do want to— So if we reject the idea that they've extended the warranty because we can't find it in the TSB or the letter, you've still got a remaining argument that there's a duty to warn, which itself— Yes, sir. —rises. Okay. And I want to respond to Judge McCabe— See why I'm a little puzzled by that? I'm sorry, sir. You can see why I'm a little puzzled. I understand. Okay. I want to—the basis is the— Well, briefly, because you're out of time. What? Make your remarks brief, if you would, please. No. Yeah, Judge McKeague asked me for the case I relied on, and it's Burton v. Chrysler Corp. It's on pages 23 and 24 of our opening brief. Okay. Thank you. It talks about the duty and when it arises. It looks like we can find the bulletin as Exhibit A to your opposition to the motion to dismiss in the district court. Okay. We have access to that. Okay. But it is the Burton case, and it does list four different reasons why the new company would be responsible. Got it. Thank you. Thank you, Your Honors. I appreciate the time. Thank you, and the case is submitted.